**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCH ASSOCIATES CONSTRUCTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NEW JERSEY BUILDING LABORERS STATEWIDE PENSION FUND, et al.,<br><br>Defendants. | Civil Action No.: 14-815 (JLL)<br><br><br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiff March Associates Construction, Inc. ("MACI" or "Plaintiff")'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or stay the proceedings and compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 by Defendants New Jersey Building Laborers' Statewide Pension Fund and Trustees of New Jersey Building Laborers' Statewide Pension Fund (together, the "Fund"), and New Jersey Building Laborers District Council (the "Union"), (collectively, "Defendants"). (Def's Mem. in Supp. of Mot. 1, ECF No. 11.)  No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the instant motion, Defendants' motion to dismiss is denied, and their motion to compel arbitration is granted.

1

# I. <u>BACKGROUND</u>

This matter arises out of a withdrawal liability action instituted by the Fund against MACI. MACI filed the instant declaratory judgment action alleging surreptitious insertion by the Union of an amended provision, Section 1.10(b), in a collective bargaining agreement that, if found valid, would prevent Plaintiff from taking advantage of an exemption to withdrawal liability under the Employee Retirement Income Security Act ("ERISA") for members of the construction industry. (Compl.¶¶ 27, 30, ECF No.1.)

According to the Complaint, Plaintiff is a general contractor in the building and construction industry. (*Id.* at ¶ 1.) In May 2002, the Building Contractors Association of New Jersey ("BCANJ") and the Union entered into a Collective Bargaining Agreement ("CBA") that expired on April 30, 2007 (the "2002 CBA"). (*Id.* at ¶ 8.) Also in May 2002, the Union issued an agreement (the "Independent Agreement") for non-union employers to sign; this agreement was between the Building Site and General Construction Contractors and Employers and the Union. (*Id.* at ¶ 9.) Section 1.10 of the 2002 CBA stated, "[t]he Unions recognize that the [BCANJ] and its affiliated Associations shall be the sole bargaining representatives with the Union for all members of the Associations bound hereby carrying on work in this State as defined in this Agreement." (*Id.* at ¶ 10.)

Prior to the 2002 CBA's expiration, the BCANJ and Union commenced negotiations for a new agreement (the "2007 CBA"). (*Id.* at ¶ 11.) In April 2007, the BCANJ and Union signed a Memorandum of Understanding (the "MOU") outlining the provisions in the 2002 CBA that they intended to change. The MOU made no reference to Section 1.10. (*Id.* at 12.) The Union subsequently sent BCANJ a redlined version of the 2002 CBA containing proposed changes for the new agreement. (Pl's Mem. in Opp. to Mot. ¶ 7, ECF No. 16.) The redlined document altered

Section 1.10 by adding a subsection (b) containing the following new language: "[i]n the event that an employer is bound by this Agreement through the BCANJ or other employer association thereafter withdraws or is terminated from such organization, then and in that event such employer shall thereafter be bound to the [Independent Agreement]." (*Id.* at ¶ 8.)

In a meeting between BCANJ and the Union, BCANJ indicated its agreement to the revised language of Section 1.10. (*Id.* at ¶ 10.) Before moving on to negotiate other aspects of the agreement, the Union sent BCANJ "a document incorporating all the changes to the 2002 CBA that the BCANJ and Union had agreed upon as of that date," including the agreed-upon change to Section 1.10. (*Id.* at ¶ 11.)

Following negotiation of some other provisions, the Union sent BCANJ a final version of the 2007 CBA. (*Id.* at ¶ 12.) This final version "purportedly incorporated the most recent set of agreed upon changes," and was intended for execution. (*Id.*) However, BCANJ alleges that the Union surreptitiously changed the previously agreed-upon language of Section 1.10(b) of the 2007 CBA without consulting or notifying BCANJ. *(Id.* at ¶ 13.) The language contained in Section 1.10(b) of the final executed version of the 2007 CBA read as follows:

> In the event that an employer is bound to this Agreement through the BCANJ or other employer association thereafter withdraws or is terminated from such organization, <u>or does not renew the grant of bargaining rights to such Association,</u> then and in that event such employer shall thereafter be bound to the [Independent Agreement]<u>, including the notice requirements of Article XXVIII, Section 23.10 thereof should the [e]mployer intend to terminated the Agreement.</u>

(*Id.* at ¶ 13 (emphasis added).) The changes highlighted above were not redlined or otherwise highlighted in the final version of the 2007 CBA sent by the Union to BCANJ. (*Id.*)

BCANJ alleges that before executing the final version of the agreement, it reviewed the document "to ensure the most recent set of agreed upon changes were accurately recorded." (*Id.* at ¶ 14.) However, BCANJ claims that it "did not review Section 1.10, or other Sections that

were not subject to the most recent round of negotiation, because there had been no further negotiations regarding those sections." (*Id.*) Thus, BCANJ executed the agreement without knowledge of the changed language in Section 1.10(b). (*Id.* at ¶ 15.)

BCANJ further alleges that, at the same time the Union provided the final version of the 2007 CBA for execution, it also sent BCANJ "an electronic version of the 2007 CBA," containing the Section 1.10 that BCANJ and the Union actually agreed upon during negotiations. (*Id.* at ¶ 16.) It was this electronic version which BCANJ posted on its website for its members to access. (*Id.* at ¶ 17.)

"In 2008, MACI became a member of the BCANJ and a signatory to the 2007 CBA." (*Id.* at ¶ 18-19.) Subsequently, on January 21, 2012, "MACI sent BCANJ and the Union a letter repudiating the 2007 CBA upon its expiration on April 30, 2012 pursuant to section 8(t) of the National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA")." (*Id.* at ¶ 20.) Plaintiff alleges that under the Section 1.10(b) to which BCANJ and the Union initially agreed, MACI would not be bound by the Independent Agreement because it neither withdrew nor was terminated from the BCANJ. (*Id.* at ¶ 27.) However, under the Section 1.10(b) that the Union allegedly surreptitiously included in the signed 2007 CBA, MACI arguably would be subject to the Independent Agreement by electing not to renew the grant of bargaining rights to the BCANJ. (*Id.*)

MACI alleges that it was relying on the electronic version of the 2007 CBA, which the BCANJ made available online for its members, when it elected not to renew its grant of bargaining rights to BCANJ while remaining a member of BCANJ. (*Id.* at ¶ 28.) Part of the reason MACI remained a member of BCANJ was to avoid withdrawal liability. (*Id.*)

"On August 15, 2012, the Fund sent MACI a letter purporting to assess withdrawal liability against [MACI] in the amount of $1,083,882." (*Id.* at ¶ 29.) MACI responded by claiming that it was exempt from withdrawal liability under the construction industry exemption contained in 29 U.S.C. § 1383(b). Additionally, on January 25, 2013, "MACI . . . requested arbitration of the withdrawal liability dispute between it and the Fund." (*Id.* at ¶ 31.)

In arbitration, the Fund argued "that MACI is, by virtue of Section 1.10(b) of the 2007 CBA, subject to the terms of the Independent Agreement, and that, under the terms of the Independent Agreement, the construction industry exemption was inapplicable as to MACI. (*Id.* at ¶ 32.) MACI maintains that it is not subject to the Independent Agreement because Section 1.10(b) of the 2007 CBA is void due to the Union's fraud in the execution of the 2007 CBA. (*Id.* at ¶ 33.)

On February 7, 2014, Plaintiff filed a Complaint in this Court seeking a declaratory judgment pursuant to 28 U.S.C. § 220 that, due to fraud in the execution, (1) section 1.10(b) of the 2007 CBA is void, (2) the Independent Agreement does not, and never has, applied to MACI, and (3) the 2007 CBA, and not the Independent Agreement, governs the pending withdrawal liability arbitration between it and the Fund. (*Id.* at p.9.) In response, Defendants filed the instant motion to dismiss or compel arbitration. (Def's Mem. in Supp. of Mot. 1, ECF No. 11.)

## II. LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is

and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at at 557 (2007)). However, this "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *West Penn Allegheny Health Sys. Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (quoting *Phillips*, 515 F.3d at 234). With this framework in mind, the Court turns now to Defendants' motion.

## III. DISCUSSION[1]

(a) <u>This Action Is Timely</u>

Defendants first argue that this action should be dismissed because it is barred by the six-year statute of limitations applicable to fraud actions in New Jersey. (Def's Mem. in Supp. of Mot. 10, ECF No. 11.) Plaintiff counters that its declaratory judgment action is defensive in nature, and thus should not be barred by the statute of limitations. (Pl's Mem. in Opp. to Mot. 10, ECF No. 16.) This Court agrees with the Plaintiff.

---

[1] Defendants attach a certification of Patrick C. Byrne to their motion to dismiss that they cite to throughout their brief. "[U]nless a court converts a Rule 12(b)(6) motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the court cannot consider material outside the pleadings (i.e. facts presented in briefs, affidavits or exhibits)." *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 475 n.21 (D.N.J. 1998). Here, the Court finds it appropriate to exclude the extrinsic documents referenced in Defendant's brief and treat the present motion as one arising under Fed. R. Civ. P. 12(b)(6).

Statutes of limitations are not applicable to affirmative defenses. *See, e.g., Wells v. Rockefeller*, 728 F.2d 209, 215 (3d Cir. 1984) (holding that, "expiration of the limitations period may not be used to deny the assertion of an affirmative defense . . . ."); *133-24 Sanford Ave. Realty Corp. v. Cisneros*, 940 F. Supp. 83, 85 (S.D.N.Y. 1996) (holding "that statutes of limitations run against affirmative claims for relief, but not against defenses."). "The purpose of [statutes of limitations] is to keep stale litigation out of the courts." *United States v. W. Pac. R. Co.*, 352 U.S. 59, 72 (1956). "To use the statute of limitations to cut off the consideration of a particular defense in [a] case is quite foreign to the policy of preventing the commencement of stale litigation." *Id.* A statute of limitations will only be deemed by the court to extend to defenses as well as causes of action if the statute explicitly does so using "the clearest congressional language." *Id.* at 71.

In this case, the cause of action is one for declaratory judgment brought defensively in response to a claim for withdrawal liability. (*See* Compl. 9, ECF No. 1.) That the Plaintiff's fraud claim is brought in a defensive posture is demonstrated by the fact that, but for the Fund's separate action regarding withdrawal liability, the fraud claim would not have been raised. Furthermore, Plaintiff's declaratory judgment action essentially seeks a declaration of nonliability. "Non-liability . . . is not a 'cause of action' within the meaning of the limitations section. Non-liability is the negative of the claim or cause of action with respect to which the declaration is sought."*Luckenbach S. S. Co. v. United States*, 312 F.2d 545, 549 (2d Cir. 1963) (refusing to apply the statute of limitations to an action seeking a declaratory judgment that an agreement was usurious). Finally, the statute of limitations for fraud, by its terms, applies only to "actions at law," and makes no mention of claims brought in defense.[2] Thus, the statute is clearly

_____

[2] N.J.S.A. 2A:14-1 states, in relevant part, that "[e]very action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or

not intended to extend to defenses. At this stage, these factors are sufficient to make the statute of limitations inapplicable to Plaintiff's request for declaratory judgment as to fraud.

(b) The Complaint Adequately Pleads Fraud in the Execution

Defendants next argue that the Complaint should be dismissed for failure to plead the elements of a claim of fraud in the execution. (Def's Mem. in Supp. of Mot. 13, ECF No. 11.) "[T]he elements of fraud are: (1) a material factual misrepresentation; (2) made with knowledge or belief of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in justifiable reliance [by] that party to his detriment." *Agathos v. Starlite Motel*, 977 F.2d 1500, 1508 (3d Cir. 1992).

Defendants argue that in order to state a claim for fraud in the execution, "a party must 'show excusable ignorance of the contents of the writing signed.'" (Def's Mem. in Supp. of Mot. 14, ECF No. 11 (quoting *Agathos*, 977 F.2d 1505).) Defendants further argue that "excusable ignorance" can only exist "when a party executes an agreement with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms." (*Id.* at 14 (quoting *Connors v. Fawn Mining Corp.*, 30 F.3d 483, 490 (3d Cir. 1994)). The Court disagrees with Defendants' characterization of fraud in the execution claims as applied to the instant matter.

In *Connors v. Fawn Mining Corp.*, the Third Circuit held that

> [i]f an employer reviews a document reflecting the agreements reached in collective bargaining and the union surreptitiously substitutes a materially different contract document before both sides execute it, we think it clear that there has been a fraud in the execution of the contract and that the agreement reflected in the executed document is *void ab initio* and unenforceable by the union. The employer has never manifested an assent to the terms of the alleged

---

chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."

contract, and the written document purporting to evidence the agreement has been obtained by fraud.

*Connors v. Fawn Mining Corp.*, 30 F.3d 483, 493 (3d Cir. 1994). In such a situation, the court held that the employer's claim "is equivalent to a claim of excusable ignorance of the contents of the writing signed," and "falls within the definition of fraud in the execution that this court laid out in *Agathos*." *Id.* at 492. Based on the facts plead, the Court concludes that Plaintiff has plead a plausible fraud in the execution claim. Defendants' motion to dismiss on this ground is therefore denied.

(c)   The Parties Must Arbitrate this Dispute

Finally, Defendants argue that the present dispute is committed to arbitration under the CBA. (Def's Mem. in Supp. of Mot. 17, ECF No. 11.) Plaintiff responds by arguing that the arbitration clause of the CBA is inapplicable. (Pl's Mem. in Opp. to Mot. 13, ECF No. 16.) The Court finds that, although arbitration of the present dispute is not called-for under the MPPAA, it is required by the terms of the CBA between the parties.

**(1) Mandatory arbitration under the MPPAA does not apply**

ERISA is a comprehensive statute that regulates employee retirement plans, including multiemployer pension plans, "in which multiple employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain amount of time working for one or more of the contributing employers." *Trs. of the Local 138 Pension Trust Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 129 (2d Cir. 2012). In order to combat threats to the solvency of multiemployer pension plans, Congress amended ERISA by enacting the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), Pub. L. No. 96-364, 94 Stat. 1208.

9

The MPPAA states that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a). Thus, a suit by a pension fund against an employer for withdrawal liability would be subject to the MPPAA's arbitration provision. Furthermore, an employer seeking a determination of its contribution requirements under a collective bargaining agreement is also subject to the MPPAA's arbitration provision. *See Philadelphia Journal, Inc. v. Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 1989 U.S. Dist. LEXIS 4727, 1989 WL 45865, *5 (E.D. Pa. 1989).

In this case, both parties agree that mandatory arbitration of the present dispute under 29 U.S.C. § 1401 of the MPPAA does not apply, although they reach this conclusion through different means. Plaintiff argues that, although the dispute is essentially a withdrawal liability dispute between the Fund and MACI, the dispute should not be arbitrated pursuant to § 1401 of the MPPAA because the fraud claim currently before the Court "is not one of the issues enumerated for mandatory arbitration under the MPPAA's statutory scheme," as elaborated in 29 U.S.C. §§ 1381-1399. (*See* Pl's Mem. in Opp. to Mot. 14-15, ECF No. 16.)

Defendants, on the other hand, argue that the present dispute is solely "a labor dispute between the Union and an employer concerning the enforcement of a term of a binding Collective Bargaining Agreement." (Def's Mem. in Further Supp. of Mot. 11, ECF No. 17.) Defendants point out that the fraud claim currently before the Court is against the Union, which negotiated the CBA, and not the Fund, which did not even exist at the time. (*Id.* at 10.)

The MPPAA states that it applies to "dispute[s] *between an employer and the plan sponsor* of a multiemployer plan." 29 U.S.C. § 1401 (emphasis added). Defendants therefore argue that the dispute falls under the arbitration clause of the CBA, and not under the MPPAA's

mandatory arbitration provision. The Court agrees with the Defendants that the claim presently before the Court is one for fraud in the execution regarding the Collective Bargaining Agreement negotiated by the Union and MACI through its agent, and that arbitration under the MPPAA is therefore not appropriate.

**(2) The Arbitration clause of the CBA requires arbitration of the present dispute**

Having determined that this is ultimately a dispute about the Union's alleged fraud in negotiating the CBA, it remains for the Court to determine whether this issue is committed to arbitration by the arbitration clause of the CBA. "[T]he question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In evaluating whether an issue is subject to arbitration a court must "inquir[e] into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

"When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability[;] "[a]n order to arbitrate [a] particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* (quoting AT&T Techn's., 475 U.S. at 650). "When . . . the collective bargaining agreement contains a broad grievance and arbitration clause, the presumption of arbitrability applies—we presume that the parties chose arbitration." *United Steelworkers of Am., AFL-CIO-CLC v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1474 (3d Cir. 1992). "In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techn's, Inc.*,

475 U.S. 643 at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 588 (1960)). "Notwithstanding that presumption, 'arbitration is still a creature of contract and a court cannot call for arbitration of matters outside of the scope of the arbitration clause.'" *Rite Aid of Pennsylvania, Inc. v. United Food & Commercial Workers Union, Local 1776*, 595 F.3d 128, 131 (3d Cir. 2010) (quoting *United Steelworkers of Am., AFL-CIO-CLC*, 522 F.3d at 332.

The CBA in this case clearly contains an arbitration provision, which is located at Section 21.20(b) of the CBA. (Def's Mem. in Supp. of Mot. 17, ECF No. 11.) The fact that Plaintiff is bringing a fraud in the execution claim—and therefore challenging whether the contract as a whole was ever properly assented to—does not necessarily render the arbitration provision unenforceable. In *Buckeye Check Cashing, Inc. v. Cardegna*, the Supreme Court found that arbitration provisions are severable "from the remainder of the contract." 546 U.S. 440, 445-6 (2006). Admittedly, *Buckeye Check Cashing* leaves open the possibility that certain fraud in the execution claims might be inappropriate for arbitration. *See id.* at 444 n.1. However, where, as here, the alleged fraud in the execution is limited to a discrete part of the contract, and the arbitration provision itself remains untouched by any allegation of fraud, the arbitration provision is enforceable. *See e.g.*, *Buckeye Check Cashing Inc.*, 546 U.S. at 448 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[I]n passing upon a[n] . . . application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.") Therefore, the Court holds that a valid arbitration agreement exists in the CBA.

Not only does a valid arbitration provision exist, but it is a broad arbitration provision, deserving of a strong presumption in favor of arbitrability. *See AT&T Techn's, Inc.*, 475 U.S. 643 at 650 (holding that the presumption in favor arbitrability is "particularly applicable" where there is a broad arbitration clause). The arbitration provision provides for arbitration of "[a]ll other questions or grievances involving the interpretation and application of this agreement, or any grievance concerning the terms and condition of work, other than trade jurisdictional disputes . . . ." (Def's Mem. in Supp. of Mot. 17, ECF No. 11.) This language indicates that the arbitration provision is intended to cover a broad range of disputes. *See, e.g., United Steelworkers of Am.*, 363 U.S. at 588 (interpreting an arbitration clause as "broad" where it provided "for arbitration of disputes respecting the interpretation and application of the agreement and, arguably, also some other things"); *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 95 (3d Cir. 1987) (interpreting an arbitration clause as "broad" where it "provide[d] for arbitration of 'any dispute arising out of a claimed violation of this Agreement'"); *Int'l Union, United Auto., Aerospace, & Agr. Implement Works of Am. (UAW) v. Kelsey-Hayes Co.*, 11-14434, 2011 WL 6739402, at *4 (E.D. Mich. Dec. 22, 2011) (interpreting as "broad" a clause committing to arbitration "any dispute or disagreement concerning the interpretation and application of this Agreement").

Having determined that the CBA contains a broad arbitration clause, the Court must determine whether the specific dispute falls within the scope of the arbitration agreement. This inquiry consists of three parts. First, the Court must determine whether the present dispute falls within the arbitration clause. *See Rite Aid of Pennsylvania, Inc.*, 595 F.3d at 140. Second, the Court must determine whether "any other provision of the contract expressly exclude[s] this kind

of dispute from arbitration." (*Id.*) Finally, the Court must determine whether there is "any other 'forceful evidence' indicating that the parties intended such an exclusion." (*Id.*)

With regard to the first inquiry, the Court determines that the present dispute constitutes a "question" regarding the "application of this agreement." (Def's Mem. in Supp. of Mot. 17, ECF No. 11.) The issue of whether or not the withdrawal liability portion of the contract was the product of fraud bears directly upon the applicability of that section. This characterization places Plaintiff's fraud in the execution claim squarely within the arbitration provision of the CBA.

As to the second inquiry—whether the contract expressly excludes claims of fraud—the Court concludes that it does not. On its face, the arbitration clause includes only one explicit exception, which is with regard to trade jurisdictional disputes. (Def's Mem. in Supp. of Mot. 17, ECF No. 11.) Similarly, as to the final inquiry—whether there is forceful evidence of an intent to exclude fraud claims from arbitration—the Court sees no evidence of such an intent, and neither party attempts to argue that such evidence exists. The Court therefore concludes that the present dispute is committed to arbitration under the arbitration provision of the CBA.

**(3) The Court will stay further proceedings pending arbitration**

Defendants urge the Court to stay further proceedings pending arbitration of this dispute. (*See* Def's Mem. in Supp. of Mot. 26, ECF No. 11.) The Federal Arbitration Act, which governs procedural stays pending arbitration, requires that a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under . . . an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9. U.S.C. § 3. Additionally, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In other words, "[i]f the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." *Katchen v. Smith Barney, Inc.*, CIV.A. 04-3762 (JLL), 2005 WL 1863669 at *7 (D.N.J. Aug. 3, 2005) (quoting *U.S. v.. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir.2001)). Having already determined that a valid arbitration agreement covering this dispute exists, this Court is compelled to stay further proceedings pending arbitration of this dispute and order the parties to proceed with arbitration pursuant to the arbitration agreement.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendant's motion to compel arbitration of this matter pursuant to the arbitration provision of the Collective Bargaining Agreement and stay proceedings in this Court pending arbitration is GRANTED.

6/11/14

Jose L. Linares
United States District Judge